**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0306n.06

No. 09-5483

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**May 19, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ROBERT D. JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| F R A N K L I N   F A R M E R S | ) | |
| COOPERATIVE, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

**Before:  GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Plaintiff Robert Johnson appeals the district court's

order granting summary judgment to defendant Franklin Farmers Cooperative (FFC) in this case

brought under the Age Discrimination in Employment Act (ADEA).  We AFFIRM.

**I**

Neither party disputes the district court's factual summary:

> Plaintiff, a male resident of Franklin County, Tennessee, was born on June 7,
> 1942.  He was 64 years old at the time of the alleged discrimination.  Defendant is a
> Tennessee corporation, an independent cooperative business controlled by its
> members.  The members, each of whom own one share of voting stock, are
> responsible for electing a board of directors.  The board of directors, in turn, establish
> the policies and employs a general manager.  The daily operation of Defendant's
> business is under the direction and supervision of this general manager, who reports
> to the board of directors.  At all times relevant to the instant case, Doug Swann served
> as Defendant's general manager.

While acting as Defendant's general manager, Swann identified three positions that he believed could be eliminated as a result of the discontinuance of the member marketing allowance. Swann eliminated William Clark's position as the assistant manager of Defendant's store in [Decherd, Tennessee[1]]. Clark, age 62, had already decided to retire at the end of 2006. Swann also eliminated a service technician position from the Car Care Center, which was held by a [24] year old named Charles Smith. The third position that was eliminated was the outside salesman position, which was held by Plaintiff. Swann believed each of these three positions could be performed by other existing employees. After these positions were eliminated, Defendant had thirty-four active employees. Twenty-three of those employees were in a protected age group and six were sixty years of age or older. Additionally, Defendant would hire its retired employees on a part-time basis during busy seasons.

On September [5], 2006, Plaintiff alleges that he was informed that his position as outside salesman was being eliminated. Immediately after receiving notice that his position would be eliminated, Plaintiff filed for and received short-term and long-term disability benefits through Defendant's insurance company. Consistent with his application for disability benefits, Plaintiff ceased working on September [18], 2006.

In support [of] his application for disability benefits, Plaintiff obtained letters from three physicians attesting to his inability to work. Seth Cooper, M.D. wrote that Plaintiff had a history of follicular lymphoma and a destructive lesion with a pathologic compression causing spinal instability and also stated that Plaintiff suffered from organic heart disease with chronic atrial fibrillation. He stated that Plaintiff "is disabled to work because of [the] destructive lesion of his spine and his underlying malignancy." Everette I. Howell, M.D. wrote that Plaintiff's spinal difficulties made it so that he was "clearly [] unable to work as a result of his persistent pain." Ephraim B. Gammada, M.D.[,] wrote that Plaintiff's spinal difficulties made it so that he is "unable to work" and "should be considered for [permanent] disability."

Plaintiff applied for and received long-term disability payments under Defendant's company plan on December 17, 2006. In October 2006, Plaintiff also applied for social security benefits. Plaintiff's application for social security benefits was approved in April of 2007. Plaintiff contends that "he was capable of performing his Outside Salesman position and remains capable of performing that position today" and that Defendant's decision to eliminate his position was an adverse employment action. Plaintiff also contends that he was replaced by a 25-year-old man and that his

---

[1]FFC's region includes Decherd and Huntland, Tennessee. R. 19-1, p. 9.

age was the ultimate issue and determining factor in Defendant's decision to terminate Plaintiff's position. [R. 36, 3-5.]

## II

This court reviews the district court's grant of summary judgment *de novo*. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The district court must draw all reasonable inferences in the non-moving party's favor. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).

The ADEA prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). An ADEA plaintiff must prove by a preponderance of the evidence, either direct or circumstantial, that age was the but-for cause of the challenged employer decision. *Gross v. FBL Fin. Services, Inc.*, – U.S. –, 129 S. Ct. 2343, 2351 n.4 (2009). There is no dispute in this case that there is no direct evidence of discrimination.

In analyzing circumstantial evidence in ADEA cases, this circuit applies the *McDonnell Douglas*[2] framework. *Geiger*, 579 F.3d at 622. A plaintiff sets forth a *prima facie* case of age discrimination through circumstantial evidence by establishing: 1) that he was a member of a protected class; 2) that he suffered an adverse employment action; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class, *id.* at 622, or that he was treated differently than similarly situated employees outside the protected class, *see Martin*

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

*v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). If a plaintiff is terminated as part of a work force reduction, "this court has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (citing *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

## A

The last three *prima facie* elements are disputed. As to the first disputed element, FFC maintains that Johnson did not suffer an adverse employment action because he voluntarily left his position because of an alleged disability before it was eliminated. FFC cites no pertinent authority.

"An adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Thompson v. Henderson*, 226 F. App'x 466, 472 (6th Cir. 2007) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "[D]e minimis employment actions are not materially adverse and, thus, not actionable." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). "A 'mere inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).

The record is clear that on September 5, 2006, Swann informed Johnson that Johnson's position was being eliminated effective September 30, 2006. During the same conversation, Johnson

asked Swann to allow him to work for 19 more months, i.e., until he would be eligible for full retirement, but Swann declined. Johnson applied for short-term disability benefits and ceased working on September 15, 2006. He began receiving short-term disability benefits on September 18, 2006. Johnson testified that had Swann not eliminated his position, he would have continued working.

FFC's contention that Johnson *voluntarily* ceased working is thus belied by the record. Viewed in a light most favorable to Johnson, the evidence supports Johnson's assertion that he involuntarily ceased working two weeks before FFC would eliminate his job, and that FFC brought about a significant change in his employment status. The *prima facie* showing is not intended to be onerous. *Jackson v. FedEx Corporate Services, Inc.*, 518 F.3d 388, 396 (6th Cir. 2008) (noting in this Title VII case, "the district court impermissibly placed a burden of producing a significant amount of evidence in order to establish a *prima facie* case. That burden is not appropriate at the *prima facie* state [*sic* stage], but rather is better suited for the pretext stage that occurs later.") Under these circumstances, we agree with the district court that Johnson established that he suffered an adverse employment action.

**B**

FFC also maintains that "Johnson's disability means that he was not otherwise qualified for" the position in outside sales and could thus not establish the third *prima facie* element. FFC acknowledges that Johnson's assertion of total disability does not act as a legal bar to his claim, but maintains (without citing authority) that Johnson "must explain the apparent inconsistency between his admission of total disability . . . and his physician's letters attesting to that disability, on the one

hand, and the necessary elements of his *prima facie* claim of age discrimination on the other hand."[3]

Assuming that Johnson must provide such an explanation, he has done so. The record evidence, including deposition testimony of Johnson, Swann, and Hankins, and the affidavits of former customers of Johnson's, supports the position that Johnson could and did perform his job well. We thus agree with the district court that Johnson established that he was qualified for the position he held–the third *prima facie* element.

## C

FFC also maintains that Johnson did not establish the final element of a *prima facie* claim. The district court concluded otherwise:

> With respect to the last prong of the prima facie ADEA claim, Plaintiff argues that he was replaced by younger workers. After Plaintiff's position was eliminated, his duties were handled by two of Defendant's employees. John Hankins, a 30-year-old fertilizer salesman, handled product sales for the Defendant. Additionally, Cory Dziadkowiec, a 25-year-old livestock specialist, also handled product sales. Neither took on the title of outside sales person. Plaintiff argues that Hankins is his *de facto* replacement and that Defendant is merely waiting until the instant action is over to officially appoint him to this position. This conclusion is supported by Swann's deposition testimony, wherein he stated that "if I hired an outside salesman that it would look like that . . . I needed an outside salesman . . . and may have an adverse effect on this decision." This testimony could lead a reasonable juror to conclude that this younger employee was Plaintiff's *de facto* replacement. Accordingly, the Court finds that Plaintiff has met his burden in establishing a prima facie ADEA discrimination claim. [R. 36, 9.]

The district court's analysis did not include the heightened *prima facie* requirement in reduction in force (RIF) cases. "Where . . . there is a reduction in force, a plaintiff must either show that age was a factor in eliminating his position, or, where some employees are shifted to other

---

[3]Def.'s Br. at 14-15.

positions, that he was qualified for another position, he was not given a new position, and that the decision not to place him in a new position was motivated by plaintiff's age." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998) (quoting *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992)). "The purpose of the additional evidence requirement is to ensure, in reduction of force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

On the question whether there was a bona fide RIF, Swann testified that it was necessary that he eliminate the three positions because of a $112,714.00 budgetary shortfall in fiscal year 2007. Johnson concedes that there was such a budgetary shortfall, but asserts that there was no real RIF;[4] he maintains that his position was the only one eliminated and he was *de facto* replaced by the younger Hankins. Johnson presented evidence that Jon Hankins and Cory Dziadkowiec (both of

---

[4]Johnson concedes that FFC's parent organization, the Tennessee Farmers Cooperative (TFC), did eliminate the member marketing allowance of $112,714.00 in fiscal year 2007, but maintains that the TFC "restructured the way in which it distributed funds to its member cooperatives . . . and each cooperative received an increase in the amount of patronage funds it received." Johnson's support for this assertion is an FFC Audit Report for the year ending September 30, 2007 (i.e., one year after Swann eliminated Johnson's position), which shows that the Patronage Refund category increased by approximately $50,000, and that FFC's equity in the TFC increased from $1,217,639.00 to $1,268,308.00.

Johnson presented no evidence supporting that Swann, or anyone else at FFC, knew in September 2006 that in fiscal year 2007, FFC would receive TFC monies that would compensate for the $112,000 shortfall. The audit report dated September 30, 2007 was not available to Swann in September 2006, when he decided to eliminate three positions at FFC. Johnson presented no evidence to controvert that before September 5, 2006, Swann learned that TFC would not be paying FFC approximately $112,000 in fiscal year 2007 and that there was, indeed, a $112,000 shortfall in fiscal year 2007.

whom began employment with FFC in 2005) made outside sales calls after Johnson ceased employment at FCC. However, there is no evidence that Hankins and/or Dziadkowiec replaced Johnson–rather, they each performed their own positions' duties (Hankins was fertilizer and crop department manager; Dziadkowiec was livestock specialist) and, in addition, made occasional sales calls. An employee is not replaced for purposes of the fourth element of a *prima facie* case of discrimination when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *See Geiger*, 579 F.3d at 623; *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372-73 (6th Cir. 1999).

Johnson's contention that his was the only position Swann eliminated is not supported by the record. Although Clark was permitted to work until he retired on December 30, 2006, Swann testified that Clark was not thereafter replaced. Although Smith was rehired in November 2006, Swann testified that the reason was that another Car Care Center employee was moved to counter sales, so an opening came about in the Car Care Center. FFC Employee lists confirm that the number of employees in the Car Care Center declined from 9 to 8, in keeping with Swann's testimony that a position there was eliminated, and that Clark's Assistant Manager/counter sales position at the Decherd office was eliminated. Johnson's argument that FFC did not institute a real RIF because his position was the only one eliminated thus fails.

**D**

Given our conclusion that Johnson was terminated as part of a work force reduction, Johnson must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the

employer singled [him] out [] for discharge for impermissible reasons." *Geiger*, 579 F.3d at 623 (citing *Barnes*, 896 F.2d at 1465).

Johnson concedes that he presented no direct or statistical evidence of age discrimination [Pl.'s Br. 9], and we conclude that the circumstantial evidence he presented does not show that age was a factor in eliminating his position. Swann was deposed two years after the RIF. Although Swann's deposition testimony that Johnson's lawsuit may have had an effect on his decision not to join with the other counties in hiring Hankins as an outside salesman[5] could be interpreted to mean that Swann intended to eventually replace Johnson, it is insufficient to demonstrate that Swann's choosing to eliminate Johnson's position was linked to age. That Swann decided to retain the two younger, less-experienced Hankins and Dziadkowiec, also does not satisfy the additional evidence requirement. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 266-67 (6th Cir. 2010) (the additional evidence criterion is not satisfied by showing that younger persons were retained in a position that plaintiff is capable of performing).

---

[5]At Swann's deposition in November 2008, plaintiff's counsel asked him whether he had talked to Hankins about the possibility of coming back to FFC as an outside salesman at some point in the future. Swann responded that Hankins [who had left FFC's employ in September 2008] was employed by three counties, each of whom paid a portion of his salary. Swann testified that "At one point, I was asked if I wanted to join in with those other counties, and I said, no, not now. And I don't know if I would in the future." R. 19 at 36. Plaintiff's counsel later asked Swann, "Did this lawsuit have any bearing on your decision not to join?" and Swann responded "Possibly." When asked "In what way?" Swann responded, "Well, I mean, if I – I guess in my mind, thinking if I hired an outside salesman, that it would look like that, you know, I needed an outside salesman, you know, and may have an adverse effect on this decision. I don't know exactly how to answer that, you know." R. 19 at 38.

We AFFIRM the district court's grant of summary judgment to FFC, but for the reason that Johnson failed to establish a *prima facie* case of age discrimination under the heightened standard required in RIF cases. Given our disposition, we need not address the issue of pretext.