**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0653n.06

No. 12-3701

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 17, 2013*
DEBORAH S. HUNT, Clerk

ERIC K. PAASEWE, )
)
    Plaintiff-Appellant, )
)
                         )   ON APPEAL FROM THE UNITED
v.                         )   STATES DISTRICT COURT FOR
                         )   THE SOUTHERN DISTRICT OF
ACTION GROUP, INC.,         )   OHIO
)
    Defendant-Appellee. )
)

**BEFORE:  GUY, DAUGHTREY, and WHITE, Circuit Judges.**

**PER CURIAM.**  Plaintiff Eric K. Paasewe, proceeding pro se, appeals the district court's

grant of summary judgment in favor of his former employer, Action Group, dismissing Paasewe's

claims that he was subjected to a racially hostile work environment and terminated in retaliation for

engaging in protected conduct, in violation of Title VII of the Civil Rights Act of 1964 (Title VII),

42 U.S.C. §§ 2000e–2(a) and 2000e-3(a).  Because disputed issues of material fact preclude

summary judgment, we REVERSE and remand for further proceedings.[1]

**I.**

**A.**

Paasewe, who is of African origin, worked as a grinder for Action Group, an equipment

manufacturer, from July 2008 until December 2008.  In his affidavit,[2] Paasewe asserted that

harassment occurred at his job from the start.  Several supervisors and employees remarked to him

---

[1] This case has been referred to us pursuant to Federal Rule of Appellate Procedure 34(a)(2)(C).  Upon examination, we unanimously agree that oral argument is not needed.

[2] Paasewe submitted a notarized response to Action Group's summary judgment motion, which the district court treated as an affidavit.

a number of times that the car he drove to work was too expensive for a black man earning $10 an hour, and asked him what he did outside of work to be able to drive such an expensive car. The human resource director in the same vein questioned Paasewe everyday about "who he really is" and his "true identity," remarking that the company would have no choice but to get rid of Paasewe if he did not disclose the truth. One week later, the human resource director falsely accused Paasewe of sexually harassing a white female employee. That allegation, although subsequently retracted, spread around the company and "destroy[ed]" his reputation.

In mid-August 2008, Paasewe went to work wearing a shirt in support of then-presidential candidate Barack Obama. A white Action Group employee, Tim Seitz,[3] called Paasewe "boy," told him not to wear the Obama shirt again, threatened to kill Paasewe and Obama if Obama won the election, and remarked that Paasewe should take Obama back to Africa to vote for him.[4] Although an Action Group manager held a meeting with employees and issued Seitz a verbal warning that such comments would not be tolerated, no further disciplinary action was taken. When Paasewe told management that he was going to report the company if it refused to report Seitz to the police for his threats, several supervisors threatened to fire Paasewe for absences he had in July, although the human resource director informed them that she had excused those absences.

Contrary to Action Group's assertions, Paasewe stated that Seitz did not apologize for the racial remarks. Moreover, Seitz continued harassing and intimidating Paasewe at work. Shortly after the staff meeting, Seitz made a second threat against Paasewe's life, which Action Group's

[3] Paasewe alleges that Seitz was a supervisor, but we need not decide whether Seitz was in a supervisory role for purposes of this appeal.

[4] According to Action Group, Seitz told Paasewe that if Obama was elected president, "some redneck would shoot him." In his affidavit, Paasewe refuted this characterization of Seitz's statement.

management ignored despite Paasewe's complaint. Most of the time when Seitz walked past Paasewe at work, he made racist remarks to him in a low voice and threatening gestures as though he were shooting Paasewe. In September 2008, Paasewe learned from an African-American co-worker that she had overheard Seitz tell several white employees that he could not wait for the election to be over "to see if Obama [would] win [so] he can put the first balck [sic] man out on this job[.]"[5] Paasewe reported this ongoing harassment to Action Group management but nothing was done.

Paasewe's allegations extend beyond Seitz, to Action Group's upper management. In September 2008, Action Group told all grinders to stay home for one day because there was no work for them. However, while all the African-American employees stayed home, Action Group called two white employees into work. In response to Paasewe's complaint of racial discrimination, Action Group's president directed the two white employees who had been called into work to miss two days when other grinders reported to work.

Further, in response to the August 2008 Seitz incident, Action Group issued a policy that prohibited political paraphernalia from the workplace. Nonetheless, the human resource director, who is white, brought in pins and flyers supporting a white presidential candidate, John McCain, and

---

[5]The district court incorrectly disregarded this allegation on that basis that it was "an unsworn statement which would not be admissible at trial." That Paasewe did not hear Seitz's statement directly does not render it inadmissible because, in considering a hostile-work environment claim, "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor can impact the work environment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (allowing use of incidents of racially offensive remarks made outside the plaintiff's presence to be considered in hostile work environment claim)); *see also Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 262 (6th Cir. 2001) (unpublished) (crediting evidence that plaintiff heard rumors about co-workers harassing other women in assessing whether the work environment was hostile); *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 & n.7 (8th Cir. 1999) (holding that a hostile-work-environment claimant may introduce evidence of offensive men's room graffiti she learned about through hearsay during her employment). To the extent Seitz's statement that the co-worker relayed to Paasewe bears on the issue whether the work environment would reasonably have been perceived, and was perceived, as hostile or abusive, the statement is not being offered for the truth of the matter asserted and thus is not inadmissible hearsay. *See* Fed. R. Evid. 801(c).

distributed them to employees. According to Paasewe, white employees were allowed to support McCain but black employees were not allowed to support Obama. When Paasewe complained about this perceived inequity, both the human resource director and Action Group's president, also white, responded by telling him to stay out of the company's business if he wanted to keep his job. Action Group's president threatened Paasewe: "[L]et me tell you something boy. . . . [Y]ou don't know what I am capable of doing to anyone who tr[ies] to destroy my company." A few days later, the human resource director gave McCain flyers to a black employee to pass out to "his community." In addition, the human resource director refused to sign and instructed others not to sign Paasewe's certificate of forklift training unless he agreed not to sue the company for "all the allegation[s]" he had made against the company.

Paasewe sustained a back injury at work on December 5, 2008. He attempted to return to work on December 16. Although the parties dispute the circumstances of Paasewe's attempt to provide a return-to-work slip on December 16, the company terminated him in early January 2009, with his termination made retroactive to December 17, 2008, for insurance purposes.

**B.**

In November 2009, Paasewe filed this Title VII action, alleging that he was subjected to a racially hostile work environment and that he was retaliated against for engaging in protected conduct. Action Group moved for summary judgment. Paasewe moved for judgment on the pleadings. The district court granted Action Group's motion and denied Paasewe's motion, ruling that Paasewe failed to establish a prima facie case as to both discrimination claims. Paasewe timely moved for a new trial. The district court construed Paasewe's motion as one for reconsideration and denied it. Paasewe timely appealed.

## II.

## A.

"We review de novo the district court's grant of summary judgment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins*, 517 F.3d at 332.

## B.

To establish a prima facie case of a racially hostile work environment, Paasewe must show that: (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was race-based; (4) the harassment unreasonably interfered with his work performance "by creating an intimidating, hostile, or offensive work environment"; and (5) the employer is liable. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009).

There is no dispute that Paasewe belongs to a protected group based on his African background and was subject to unwelcome harassment. On the question whether the harassment was race-based, Action Group argues that Seitz's comments, while allegedly racially motivated, were politically motivated and not directed at Paasewe. However, this fails to view the evidence in the light most favorable to the non-moving party. According to Paasewe, Seitz did not simply deride his support for Obama, but called Paasewe "boy," threatened his life, and told him that he should take Obama back to Africa to vote for him. Further, Paasewe alleged that Seitz's racial remarks and threatening gestures continued after the August 2008 incident. Seitz's use of the term "boy" in

reference to Paasewe and in context of his racially-charged statements about Obama are sufficient evidence to permit a reasonable jury to conclude that Seitz's conduct was race-based. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam) (holding that use of a term like "boy" could be probative of bias, but that the "speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage").

Turning to Paasewe's other allegations, the company's implementation of its rule against political paraphernalia was not, in and of itself, race-based. However, Paasewe also alleged that the human resource director singled him out for a false sexual harassment claim and questioned him about his true identity; supervisors and employees repeatedly asked him how a black man earning $10 an hour could afford the car he drove; and the company president called him "boy" and threatened him in response to his complaint that unequal application of the political paraphernalia rule amounted to racial discrimination. *Cf. Clay v. UPS, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) ("Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, []he would not have been the object of harassment."). Based on the totality of these alleged incidents, a reasonable jury could draw the inference that discriminatory animus extended to upper management. Although there is evidence that points to a different conclusion, it is the jury's role, not ours, to weigh conflicting evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To satisfy the fourth prima facie element that the harassment unreasonably interfered with his work performance, Paasewe "must present evidence showing that under the totality of the circumstances the harassment was sufficiently severe or pervasive to alter the conditions of [his]

employment and create an abusive working environment." *Clay*, 501 F.3d at 707 (internal quotation marks omitted); *accord Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Factors relevant to this determination include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Here, a reasonable jury could conclude that Seitz's alleged harassment and intimidation of Paasewe, coupled with Action Group's unresponsiveness to Paasewe's complaints regarding that harassment and upper management's remarks and conduct toward Paasewe, created a racially hostile work environment. Contrary to Action Group's characterization of Paasewe's allegations, Seitz's conduct did not involve one isolated remark but repeated racially-charged threats against Paasewe's life most of the time he walked past him at work. *See Hawkins*, 517 F.3d at 333–34 (explaining that summary judgment is inappropriate when a plaintiff alleges harassment that is "ongoing," "commonplace," and "continuing"; and that when a plaintiff makes allegations of ongoing harassment, the "inability to recount any more specific instances goes to the weight of [his] testimony, a matter for the finder of facts" (internal quotation marks omitted)). Under the totality of the circumstances, a reasonable jury could conclude that this conduct was more than a "mere offensive utterance." *Harris*, 510 U.S. at 23.

To satisfy the fifth element, employer liability, Paasewe must establish "that [his] employer tolerated or condoned the [alleged conduct] or that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action." *Jackson*, 191 F.3d at 659 (internal quotation marks omitted). Even assuming that Action Group took reasonable, good-faith steps to address the August 2008 Seitz incident by holding a meeting with employees and issuing a verbal

warning, Action Group took no action in response to Paasewe's subsequent complaints about Seitz's conduct, and there are issues of material fact concerning the conduct of Action Group's management toward Paasewe. We therefore reject Action Group's contention that summary judgment is proper on the basis that it cannot be liable for the alleged racially hostile conduct against Paasewe.

**C.**

To establish a prima facie case of retaliation under Title VII, Paasewe must show that: (1) he engaged in protected conduct, (2) the employer knew that he had exercised his protected rights, (3) the employer took an adverse employment action against him, and (4) there was a causal connection between his protected activity and the adverse employment action. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013). Paasewe alleged that he lodged complaints of racial discrimination with Action Group's management concerning Seitz's racially hostile conduct. The company fired him a few months later.

To establish a causal connection between these complaints and his termination, Paasewe must proffer "evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Id.* at 675 (internal quotation marks omitted). Although temporal proximity alone is usually insufficient to establish a causal connection, "temporal proximity always plays a role in establishing a causal connection; its significance depends on the context." *Id.* "In analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). "[O]ur case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal

proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference."[6] *Id.* (citations omitted).

At the prima facie stage, Paasewe's burden is "minimal," *Taylor*, 703 F.3d at 339, which means that he need not produce direct evidence of causation. Here, a reasonable jury could infer retaliatory motive from the totality of the circumstances, including temporal proximity of only a few months between Paasewe's complaints and his termination; and the comments of the human resource director and company president to the effect that if Paasewe wanted to keep his job, he should stay out of the company's business, and the president's accompanying reference to Paasewe as "boy" during that exchange. Although the president's racially-charged remarks were not made in response to Paasewe's complaints about Seitz's conduct, they were made in response to Paasewe's complaint that the company's implementation of its political paraphernalia rule amounted to racial discrimination, and a reasonable jury could conclude that they bear on the question whether the company had a retaliatory motive to terminate Paasewe in response to his complaints about racial discrimination at work.

Further, Paasewe has raised factual issues regarding Action Group's proffered legitimate, non-discriminatory reason for terminating Paasewe. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as*

---

[6] *See also Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (holding that "if there is a very close temporal proximity, then no other evidence is needed"); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566–67 (6th Cir. 2000) (noting that "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months" (internal quotation marks omitted)).

*recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). Action Group asserts that after Paasewe's December 5, 2008 injury at work, he attempted to return to work on December 16, but, when asked for a required return-to-work slip, he told the human resource director that he was going to retrieve it from his car and never returned. The company then terminated him in early January 2009, with his termination made retroactive to December 17, 2008. According to Action Group, had Paasewe brought the requested slip, he would have been allowed to return to work.

Paasewe, however, disputed Action Group's version of this incident. In his affidavit, Paasewe asserts that when he attempted to obtain a return-to-work slip on December 16, the human resource director told him not to return to work until she called him because he was under "some kind of investigation," the details of which she never told him. Paasewe obtained a return-to-work slip that same day from a chiropractor with a temporary restriction on heavy lifting, which he attached as an exhibit to his affidavit. However, the human resource director did not call him, and, shortly after, Paasewe found out that he had been terminated. Where there are different accounts of what transpired, neither of which is belied by "objective evidence in the record," *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011), summary judgment is inappropriate.

## III.

For the foregoing reasons, we REVERSE the district court's judgment and remand for further proceedings.