NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0413n.06

Nos. 16-2262 / 16-2306

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 17, 2017
DEBORAH S. HUNT, Clerk

HUGH M. ROSENTHAL,                                )
                                                  )
        Plaintiff-Appellant/Cross Appellee,       )
                                                  )
v.                                                )        ON APPEAL FROM THE
                                                  )        UNITED STATES DISTRICT
                                                  )        COURT FOR THE EASTERN
FAYGO BEVERAGES, INCORPORATED;                    )        DISTRICT OF MICHIGAN
NATIONAL BEVERAGE CORPORATION,                    )
                                                  )
        Defendants-Appellees/Cross Appellants.    )

BEFORE: KEITH, BATCHELDER and GRIFFIN, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.** Plaintiff Hugh M. Rosenthal ("Rosenthal")

appeals, and Defendants Faygo Beverages, Inc. ("Faygo") and National Beverage Corp.

("NBC") (collectively "Defendants") cross appeal, the district court's order granting summary

judgment in favor of Defendants, with respect to Rosenthal's claim that he was discriminated

against on the basis of age in violation of the Age Discrimination Employment Act ("ADEA"),

29 U.S.C. §§ 621 *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich.

Comp. Laws §§ 37.2201 *et seq.* For the reasons that follow, we **AFFIRM**.

## I.    Background

Initially, Rosenthal was employed by an outside vendor that Faygo used for its marketing

services; there, Rosenthal managed Faygo's account. However, in 1992, Faygo terminated its

contract with the outside vendor, having decided they only wanted to work with Rosenthal.

Accordingly, Rosenthal formed Rosenthal & Company Advertising ("RCA"). On October 8,

1992, RCA entered into an agreement ("the Agreement") with Faygo, in which RCA agreed to provide Faygo with advertising and marketing services. Rather than pay Rosenthal directly, pursuant to the Agreement, Faygo paid RCA twice a month, which then paid Rosenthal a salary.

In January 2008, Rosenthal approached Al Chittaro ("Chittaro"), the Executive Vice President of Faygo, whom Rosenthal directly reported to, about reducing his work schedule from five to three days a week. Chittaro granted Rosenthal's request and started paying RCA a reduced monthly amount thereafter.

Rosenthal asserts that in 2008 or 2009, Chittaro began asking plaintiff about his retirement plans approximately two to three times per year. Furthermore, Rosenthal asserts that from 2004 onward, Joe Caporella ("Caporella"), the president of NBC, began asking him about retirement annually, following a human resources presentation regarding older workers and early retirement. Additionally, Rosenthal asserts that in November 2011, Defendants began to send him articles on urinary incontinence, advanced age macular degeneration, and advanced age cognitive impairment.

In November 2011, Rosenthal was told by Chittaro's assistant, Dawn Burch ("Burch"), that Faygo had publicly posted a job announcement online for a position at Faygo entitled "Brand Manager." Defendants assert that Chittaro created the position because he felt that "a full time marketing person could improve the quality and quantity of Faygo's marketing and perform a wider variety of functions" that Rosenthal "could not have performed." Chittaro believed that Rosenthal did not provide sufficient support to Defendants' marketing teams and internal staff, he was resistant to efforts to expand marketing beyond traditional markets, his overall conduct was contrary to professional standards and ethics, and that a new brand manager was needed to remedy these deficiencies and to respond properly to social media posts by consumers.

Thereafter, on July 24, 2012, Chittaro terminated Rosenthal's services. Rosenthal was 68 years old at the time. Subsequently, Josh Bartlett, 37 years old, was hired for the Brand Manager position, and was fired after holding the position for under a year. Following his own termination, Rosenthal filed a charge of unlawful age discrimination with the Equal Employment Opportunity Commission and received a right to sue letter. Thereafter, he commenced this action in the United States District Court for the Eastern District of Michigan against Defendants. The parties filed cross motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. The district court ruled in favor of Defendants, granting their motion and deeming Rosenthal's motion moot. Rosenthal timely appealed and Defendants filed a cross appeal, asserting alternative bases for affirmance.

## II.     Standard of Review

"We review a district court order granting summary judgment de novo." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 867 (6th Cir. 2011) (citation omitted). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 867–68 (quoting *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010)). On appeal from a grant of summary judgment, the appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Further, when reviewing the trial court's grant of a summary judgment motion, the moving party's evidence "must be viewed in the light most favorable to the [nonmoving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and internal quotations omitted). However, if the nonmoving party has failed to make a sufficient

showing on an essential element of the case with respect to which it has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III.     Applicable Law and Analysis

Rosenthal alleges that Defendants terminated him because of his age in violation of the ADEA and the Elliot–Larsen Civil Rights Act ("ELCRA"). The same analysis governs both claims. *See Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). The ADEA prohibits employers from making adverse employment decisions because of an individual's age. 29 U.S.C. § 623(a)(1). Similarly, the ELCRA prohibits an employer from discharging an employee "because of" age. Mich. Comp. Laws 37.2022(a). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger*, 579 F.3d at 622 (internal citation omitted). Age discrimination claims brought under the ADEA and ELCRA are analyzed under the same framework, and a plaintiff may establish a violation of both through either direct or circumstantial evidence. *Tiley v. Kalamazoo Cty. Road Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015). Rosenthal presents his case using circumstantial evidence. Circumstantial evidence is analyzed under the *McDonnell Douglass* burden-shifting framework. *Id.* at 308. Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must establish a *prima facie* case of discrimination. *Geiger*, 579 F.3d at 620. The plaintiff may make such a showing by establishing that: (1) he was a member of a protected class; (2) he was qualified for the position held; (3) he was discharged; and (4) he was replaced by someone outside of the protected class. *Id.* at 622–23 (citations omitted).

If the plaintiff establishes his *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action; if the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). The burden of persuasion is at all times on the plaintiff to demonstrate "that age was the 'but-for' cause of their employer's adverse action." [1] *Geiger*, 579 F.3d at 620 (internal citation omitted). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (quoting *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)).

The district court determined that Chittaro's decision to terminate Rosenthal for unsatisfactory performance was not pretext for age discrimination in violation of the ADEA or ELCRA, notwithstanding evidence that Chittaro and Caporella asked Rosenthal about his retirement plans and that Rosenthal was sent articles on advanced-age related health topics. The district court considered evidence that Chittaro believed that Rosenthal did not provide sufficient support to his colleagues, resisted market expansion efforts, lacked professionalism, and that a new brand manager was needed to remedy these deficiencies and to respond appropriately to social media posts by consumers.

On appeal, Rosenthal asserts that the district court erred in: (1) declining to determine whether Plaintiff established a *prima facie* case of age discrimination; (2) determining that

---

[1] Michigan courts have applied a different causation standard to age discrimination claims under the ELCRA (whether age was a determinative or motivating factor). *See Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 702–03 (6th Cir. 2016); *See also Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 68–69 (Mich. 1997). Yet, we need not decide today which causation standard applies to ELCRA age discrimination claims because Rosenthal's claim fails under either standard.

Defendants proffered a legitimate business reason for terminating Plaintiff; and (3) finding that Plaintiff did not introduce additional evidence at the pretext stage of analysis. Defendants, in response to Rosenthal, argue on cross appeal that even if Rosenthal's assertions are true, there are alternative reasons for upholding the district court's decision, even if the district court never addressed those arguments. Specifically, Defendants assert: (1) there is no basis for liability against NBC and (2) Rosenthal is estopped from claiming he was an employee of Faygo because he consistently assumed the position of an independent contractor and was an employee of RCA. However, the court does not find it necessary to address Defendants' alternative arguments because the district court's determinations were proper.

### A. *Prima facie* case of age discrimination

Regarding whether Rosenthal established a *prima facie* case of discrimination, the district court stated that:

> Even assuming Plaintiff could overcome all of Defendants' other challenges to his claim and establish a prima facie case of discrimination, Defendants have offered legitimate, non-discriminatory reasons for his termination, and Plaintiff has not offered evidence creating a genuine issue of material fact that those reasons are pretext for age discrimination.

*Rosenthal v. Nat'l Beverage Corp.*, 202 F. Supp. 3d 700, 704 (E.D. Mich. 2016). Rosenthal takes issue with the court's analysis, arguing that it erred in declining to determine whether Plaintiff established a *prima facie* case of age discrimination, and deeming such analysis irrelevant. We disagree with Rosenthal's contention.

The district court did not decline to determine whether Rosenthal established a *prima facie* case of age discrimination; rather, the district court assumed, in Rosenthal's favor, that he had made out a *prima facie* case. A district court may certainly assume that a plaintiff makes out a *prima facie* case, move past this analytical step, and conclude that summary judgment should

be granted to a defendant because the defendant establishes a non-discriminatory reason for its decision to terminate its employee and the plaintiff fails to demonstrate pretext. *See, e.g.*, *Frizzell v. Sw. Motor Freight*, 154 F.3d 641, 646 (6th Cir. 1998). Rosenthal suffered no harm as a result of the district court's assumption, since it was accepted in his favor.

To the extent we are able to discern Rosenthal's argument, he argues that by assuming he set forth a *prima facie* case, the district court deprived him of the "presumption that Defendants unlawfully discriminated against Plaintiff," that results from the establishment of a *prima facie* case. This argument is unfounded. The district court assumed that the *prima facie* case was established, thereby concluding by implication that Rosenthal had demonstrated: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) "*circumstances that support an inference of discrimination.*" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (emphasis added). Thus, contrary to Rosenthal's contention, he was in fact granted the presumption that Defendants discriminated against him, when the district court presumed he established a *prima facie* case for age discrimination.

### B. Defendants' legitimate nondiscriminatory reasons for Rosenthal's termination

Having assumed that Rosenthal established his *prima facie* case, the district court next sought to determine whether Defendants articulated a legitimate nondiscriminatory reason for the adverse employment action. Defendants' stated reasons for why Chittaro terminated Rosenthal's services were that:

> (i) Chittaro "needed someone who would make his job easier, not harder"; (ii) "Plaintiff was snarky with other employees and [Chittaro] was tired of cleaning up Plaintiff's messes"; (iii) "Plaintiff would not do that which [Chittaro] asked him to do," namely, provide additional support to outside marketing teams and the Faygo sales staff; (iv) Chittaro "wanted to expand the marketing function to include the duties on the brand manager job description"; and (v) "with the growth of social media, [Chittaro] could not trust Plaintiff to respond appropriately to posts by consumers."

*Rosenthal*, 202 F. Supp. 3d at 704. The district court reviewed the record, determined that these reasons were supported by evidence, and concluded that in providing these bases for termination, Defendants were essentially articulating that Chittaro was dissatisfied with Rosenthal's services. The district court then concluded that dissatisfaction is an "appropriate, non-discriminatory explanation for termination." *Id.* at 706.

On appeal, Rosenthal argues that the district court erred in finding that Defendants established legitimate explanations for Rosenthal's termination by selectively reviewing the record, ignoring facts that would have been helpful to Plaintiff, "attribute[ing] emotions and interpretations to statements,'" and wrongfully resolving factual determinations in favor of Defendants.

"Under *McDonnell Douglas* and its progeny, once the plaintiff succeeds in making out a prima facie case of age discrimination, the defendant must 'articulate some legitimate, nondiscriminatory reason' for the termination." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citation omitted). Defendants assert a legitimate, non-discriminatory explanation for his termination – namely, that Chittaro was dissatisfied with his services. Having reviewed the district court's opinion and the record, it is readily apparent that there was ample evidence to support the conclusion that Chittaro was dissatisfied with Rosenthal's services. "Terminating an employee because he fails to perform satisfactorily is a legitimate and nondiscriminatory reason to end his employment." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 588 (6th Cir. 2002). In reaching its conclusion that Chittaro was dissatisfied with Rosenthal's work, the district court stated:

> [C]hittaro wanted Plaintiff to be more proactive on the sales front, by assisting sales staff with marketing strategies to drive the brand and providing sales staff with access to marketing information they would not otherwise have; Chittaro did

not feel that Plaintiff was delivering on that front. Chittaro Dep. Vol. 2, Ex. 4 to Pl. Resp., at 280-281, 285-291, 294 (Dkt. 58-6). Chittaro also asked Plaintiff to assist with marketing efforts in the southeastern markets, and to collaborate with "another division [to] promote and support [the] brand." *Id.* at 248-249. Specifically, Chittaro wanted Plaintiff to develop ideas for cross-marketing programs, as well as to offer his assistance to individuals within those other markets. *Id.* at 250, 252, 254-255. However, Chittaro received complaints from marketing individuals that Plaintiff's assistance always came with a cost, usually in the form of negativity or sarcasm. *Id.* at 255-256. In addition to sarcasm, other common complaints concerned Plaintiff's unapproachability, his unwillingness to help, and not being a team player. Chittaro Dep. Vol. 1, Ex. 6 to Pl. Resp., at 46, 58-59, 62, 66 (Dkt. 58-8).

Defendants include with their motion several emails sent by Plaintiff to influential employees of NBC and its various subsidiaries, which could be construed as disrespectful or disparaging of others. See Ex. J to Defs. Mot. at 7, 9, 13-14, 15 (cm/ecf pages) (Dkt. 54-11); Ex. M to Defs. Mot. (Dkt. 54-14). For example, Vanessa Walker, an NBC employee, asked Plaintiff about his marketing plans for Faygo in southeastern markets, noting that the area comprised a large portion of Faygo's sales, to which Plaintiff responded in a sarcastic fashion, and then forwarded Walker's response, which expressed surprise at Plaintiff's tone, to another NBC employee along with a disparaging remark. Ex. J at 13-14 (cm/ecf pages). Chittaro testified not only that the email was inappropriate, but that he also found it problematic that Plaintiff's response stated that Plaintiff knew nothing about Faygo's sales in that market. Chittaro Dep. Vol. 2 at 351. Chittaro cited this as an example of Plaintiff resisting efforts to expand Faygo marketing beyond traditional markets and to collaborate with the broader NBC marketing team. *Id.* at 328-329, 352-353; *see also* Chittaro Dep. Vol. 1 at 67-69. Other emails reflect Plaintiff's inability to conduct himself with requisite professionalism. *See* Ex. M (rude and sarcastic email to NBC's in-house legal counsel in response to an inquiry over a legal matter); Ex. N to Defs. Mot. (Dkt. 54-15) (disparaging and condescending email Plaintiff proposed to send to NBC's senior human resources advisor); Ex. O to Defs. Mot. (Dkt. 54-16) (rude and unprofessional email to third-party vendor).

Chittaro further explained that "the way [Plaintiff] worked with the marketing team in Fort Lauderdale ... made [Chittaro's] job tougher," because Chittaro would have to "take the calls" and "fix and soften however [Plaintiff] responded." Chittaro Dep. Vol. 1 at 95–96.

Finally, Chittaro testified that "[y]ears of knowing [Plaintiff]," to be "sarcastic in nature," made him concerned about how Plaintiff might respond to consumer posts via social media, although Chittaro could not recall a specific instance where Plaintiff was inappropriate to a consumer on a social media platform in the past. *Id.* at 43–45.

*Rosenthal*, 202 F. Supp. 3d at 704–06. As this excerpt shows, the district court did not selectively review the record or ignore facts that would have been helpful to Rosenthal; rather, the district court set out to determine whether the record allowed Defendants to articulate some nondiscriminatory reason for termination. Having reviewed the record in its entirety, we agree with the district court's determination and conclude there was ample evidence demonstrating that Chittaro was dissatisfied with Rosenthal's performance. Any assertion to the contrary is unsubstantiated. [2]

**C. Requiring Rosenthal to introduce additional evidence at the pretext stage of analysis**

After the district court determined that Defendants met their burden of articulating some legitimate, nondiscriminatory reason for the termination, the district court shifted the burden back to Rosenthal to demonstrate that the proffered explanation for termination was pretextual. A plaintiff is able to establish pretext by demonstrating that: (1) the offered justifications had no basis in fact; (2) the proffered reasons did not actually motivate the discharge; or (3) the reasons were insufficient to motivate the action. *Blizzard*, 698 F.3d at 285 (citations and internal quotations omitted). The district court recounted the particulars of Rosenthal's argument in detail, stating the following:

> Plaintiff does not expressly frame his argument on pretext using these well-known categories. Rather, he argues that while Chittaro claims that Plaintiff was difficult to get along with, and did point to Plaintiff's "sarcasm [sic] 'tone' " as an area of concern, Chittaro also testified that Plaintiff had been this way for a long time, yet he waited eight years before terminating the contract. Plaintiff also argues that many of the allegedly inappropriate comments Defendants now cite in support of

---

[2] Additionally, we note that Rosenthal also asserts that adjectives used by the district court - such as: rude, disrespectful, disparaging, and unprofessional – in a couple of *explanatory parenthetical sentences* immediately preceding citations to the parties' exhibits were "impermissible at the summary judgment stage." (First Br., ECF No. 27 at Pg. 24.) This assertion is of insignificant importance and Rosenthal's reliance on *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634 (6th Cir. 2015) is unfounded. The district court did not make any improper subjective determinations in its parentheticals. The court merely sought to direct its readers to particular portions of the record.

> their non-discriminatory rationale were sent to Chittaro and Alan Domzalski, whom Plaintiff counted among his friends. Plaintiff also points to certain remarks addressing Plaintiff's work product as circumstantial evidence of age discrimination, because those comments invoked language indicative of age bias, such as "traditional" and "set in his ways," and are not supported by any evidence that Plaintiff's methods were actually problematic. Finally, Plaintiff claims that his preference to work part-time could not have formed a legitimate basis for termination, because Plaintiff offered to return to full-time work, and Chittaro waved that offer aside.

*Rosenthal*, 202 F. Supp. 3d at 706 (internal citations and footnote omitted).

While Rosenthal did not expressly frame his argument using any of the three abovementioned categories, the district court gathered that Rosenthal was attempting to assert evidence that Defendant's proffered reasons for Rosenthal's termination did not actually motivate his firing. The district court then rejected this argument, reasoning as follows:

> "[T]to [sic] make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination." *Manzer* [*v. Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)]. Importantly, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

*Rosenthal*, 202 F. Supp. 3d at 707 (internal footnote omitted). Plaintiff asserts that it was error for the district court to rely on *Manzer* to conclude "that Plaintiff was required to introduce additional evidence of age discrimination beyond his *prima facie* case at the pretext stage of the *McDonnell Douglas* analysis."

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court rejected our holding in *Manzer*, in which we determined that a plaintiff must introduce additional evidence of discrimination beyond his *prima facie* evidence. *See Reeves*, 530 U.S. at 149. "We have clarified that, after *Reeves*, the *Manzer* 'additional evidence' requirement is limited to the production of evidence rebutting the defendant's proffered legitimate,

11

nondiscriminatory reason for taking the challenged action." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 533 (6th Cir. 2007) (citing *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d at 589), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 n. 4 (2009).

Upon *de novo* review, we conclude that notwithstanding the district court's improper citation to *Manzer*, Rosenthal is still unable to raise a genuine dispute of material fact regarding pretext, and the lower court's error is therefore not reversible. At this stage, "'[t]he burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff.'" *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004) (quoting *Wilkins v. Eaton Corp.*, 790 F.2d 515, 522 (6th Cir. 1986)). Here, Rosenthal has not demonstrated that Defendants' proffered legitimate, non-discriminatory reason for terminating him was pretext for illegal discrimination on the basis of age.

As properly summarized by the district court, the record is abundantly supplied with evidence that Chittaro was dissatisfied with Rosenthal's services. Rosenthal's efforts to establish that this legitimate explanation was just pretext for a decision actually motivated by an unlawful bias against age simply fall flat.

First, Rosenthal's assertion that Chittaro and Caporella's inquiry into his retirement plans demonstrates pretext is unavailing. He does not assert that either Chittaro or Caporella ever suggested that he retire or pressured him to retire, and thus, the district court correctly found that mere inquiries alone are insufficient to establish an inference of discrimination. *See Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (distinguishing questions that amounted to pressure or suggestions to retire from mere inquiries).

Rosenthal also claims he was sent "articles on age-related health topics via e-mail." With respect to this claim, the district court properly concluded the following:

12

> Plaintiff acknowledged that "part of the intent [of the articles was to cover various health topics], but the fact at that point, [he] took them to be more than that." Plaintiff did not know whether the emails were distributed to all NBC employees, but he had no reason to believe it was pinpointed strictly to him, other than "it felt like it."

*Rosenthal*, 202 F. Supp. 3d at 709 (internal citations omitted). The district court properly concluded that a plaintiff's subjective interpretations or feelings are insufficient to establish pretext. *See Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000).

Next, Rosenthal takes issue with the fact that during her deposition, Burch stated that Rosenthal's methods were "traditional"; he was "set in his ways"; and he demonstrated an inability to "evolve." The district court properly stated that these comments did not originate from a decision maker, could not be attributed to a decision maker, and were made well after the termination decision. Thus, even if taken as true, these statements could not support a jury finding that Defendant's proffered reasons for termination were intended to mask unlawful discrimination. "Statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself can not suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (internal quotation marks and citations omitted).

Having reviewed the record in its entirety, we conclude that Defendants provide ample evidence that Rosenthal resisted efforts to expand marketing beyond traditional markets, lacked professionalism, and essentially was not team player. The proffered evidence demonstrates that Chittaro believed a new brand manager was needed to expand marketing functions and to respond appropriately to social media posts by consumers. Consistent with these findings, we hold that Rosenthal fails to raise any genuine dispute of material fact that Chittaro's reasons for terminating his employment were pretextual.

**IV.**     **Conclusion**

Accordingly, for the abovementioned reasons we **AFFIRM**.