NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0068n.06

Case No. 21-1231

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIMOTHY PIO,

        Plaintiff - Appellee,

v.

BENTELER AUTOMOTIVIE
CORPORATION,

        Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 07, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

Before: COLE, GIBBONS, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.   After twenty-two years working at Benteler Automotive Corporation ("Benteler"), Timothy Pio was terminated from his job during a reduction in workforce in May 2018.  Pio, a white, American man, was fifty-eight years old at the time of his termination.  Pio sued Benteler, alleging employment discrimination on the basis of age, race, and national origin in violation of federal and state law.  The district court granted Benteler's motion for summary judgment, holding that Pio failed to establish a prima facie case of age or race discrimination and, even if he had, he did not show Benteler's proffered reasons for his termination to be pretext for unlawful discrimination.  Because Pio has not offered direct, circumstantial, or statistical evidence establishing that Benteler terminated him due to his age or race, we affirm the district court's grant of summary judgment.

**I**

Benteler makes metal automotive products and has manufacturing facilities in Goshen, Indiana; Grand Rapids, Galesburg, and Holland, Michigan; and Duncan, South Carolina. Pio was born November 28, 1959, and he "identifies as a white, American man." DE 49, Joint Statement of Material Facts ("J.S."), Page ID 187. Benteler hired Pio on July 22, 1996, to work at its manufacturing plant in Galesburg, Michigan. Pio worked as a welder and machine operator during the course of his employment. Two of Benteler's major projects were scheduled to end in early 2018. Benteler secured business to replace this anticipated loss in sales, but it was not scheduled to begin until summer 2019. In autumn 2017, Galesburg Plant Manager Guido Paffhausen told Human Resources ("HR") Manager Jennifer Piotrowicz that Benteler would have to implement a reduction in force ("RIF") due to the drop in sales. The exact number of employees to be terminated was subject to change based on attrition and fluctuations in sales volume, but it was evident positions would have to be eliminated in spring 2018.

In early 2018, the Galesburg plant had 320 Benteler employees. At a plant-wide "All Hands Meeting" on February 8, 2018, the company formally announced a RIF would occur because of the significant decrease in sales. Benteler stated no eliminations would occur before May 2018. To select the employees for reduction, HR personnel compiled a list of all employees and their personnel information. Several factors were considered in determining who would be terminated, including "performance review[s], attendance, safety records, [and] quality records." DE 50-6, Paffhausen Dep., Page ID 439. Benteler did not review all the historical data and files of every employee considered for termination, but the attendance records, performance appraisals, and active performance counseling reports it relied on were "then-current" as of 2017. HR Manager Piotrowicz reviewed Pio's file and presented a final list of employees selected for the

RIF to the plant management team at a staff meeting. There was no discussion of age, race, or national origin in Benteler management's review of the list.

On May 4, 2018, Benteler terminated Pio as part of the RIF. Pio had two negative attendance points as of May 4, 2018. His 2017 performance review stated, "Tim works hard to hit his line goals. Tim has been talked to about how important it is to stay on his line." DE 50-4, Pio Dep., Page ID 342. Benteler frequently advised Pio "not to wander away from his work area." DE 49, J.S., Page ID 189. On the day of his termination, Piotrowicz spoke with Pio and informed him that HR representatives from other Benteler plants were available to meet with him to discuss a transfer. No Benteler personnel mentioned age, seniority, race, or national origin to Pio on the day of his termination.

At the time of his termination, Pio was fifty-eight years old. Although Benteler gave each employee subject to the RIF, including Pio, the opportunity to discuss transferring to another plant with HR, Pio did not consider transferring. He did not meet with any HR representatives on the day of the RIF and did not inquire about other open positions. Benteler told Pio that he "can come back next year when we get busy and reapply," but Pio did not reapply for his position. DE 49, J.S., Page ID 189. The parties agree no one at Benteler ever spoke to Pio about his age, race, or national origin in the context of his termination or employment.

Pio sued Benteler in November 2018, approximately six months after his termination, alleging age, race, and national origin discrimination[1] in violation of federal and state law. In June 2020, Benteler moved for summary judgment and simultaneously moved to strike an affidavit from

---

[1] Although Pio frames his claim as an allegation of discrimination due to his race and national origin, his appeal does not mention national origin and focuses exclusively on his claim of racial discrimination. The district court noted Pio's filings state that his "natural [sic] origin claim here is that he is not Burmese, so it is essentially the same as his race discrimination claim." DE 69, Op. and Order, Page ID 1627.

Pio's counsel, William Piper, upon which Pio relied in his response to Benteler's Motion for Summary Judgment. In a revised affidavit, also submitted in response to the summary judgment motion, Piper attested to reviewing personnel records of Benteler employees and compiling a list purporting to have the age, race, and national origin of certain employees. Piper indicated he "could tell, from documents in their files, that many employees were born in Burma (Myanmar) or otherwise originated from there." DE 61-2, Revised Piper Aff., Page ID 1584. He also compiled a list of employees who self-identified as Black or African American and a list of individuals Benteler considered for termination on May 4, 2018. Each of these lists included an age next to the employee's name, and "[b]ased on their dates of birth, [Piper] was able to tell . . . what their ages were on May 4, 2018." *Id*. at 1586.

The district court held there was no direct evidence of discrimination and Pio had not established a prima facie case of age or race/national origin discrimination. The court further concluded that even if Pio had made a prima facie case of discrimination, he did not establish that Benteler's proffered reason for his termination during the RIF was merely pretext and he was actually terminated because of his age or race. Because Pio did not produce evidence of discrimination, the court granted Benteler's motion for summary judgment and denied as moot Benteler's Motion to Strike Piper's Affidavit.

**II**

We review de novo a district court's grant of summary judgment. *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment for Benteler is appropriate if, after drawing all reasonable inferences in favor of Pio, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

## III

The Age Discrimination in Employment Act ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") both prohibit an employer from refusing to hire, terminating, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); Mich. Comp. Laws § 37.2202(1)(a). The Civil Rights Act, 42 U.S.C. § 1981 prohibits intentional race discrimination and provides a cause of action for race-based employment discrimination, and the ELCRA similarly prohibits "discriminat[ion] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race." Mich. Comp. Laws § 37.2202(1)(a). The same analytical framework applies to both the federal and state claims. *See Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015) (age discrimination claims under the ADEA and ELCRA are analyzed using the same framework); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (race discrimination claims under § 1981 and the ELCRA are analyzed using the same framework).

A plaintiff may establish a claim of age or race discrimination through direct or circumstantial evidence. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (age discrimination); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (race

discrimination).  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Geiger*, 579 F.3d at 620 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted)).  Here, Pio does not challenge the district court's holding that he did not present direct evidence of age or race discrimination.  Accordingly, on appeal, only the district court's holding as to circumstantial evidence is at issue.

In the absence of direct evidence of discrimination, we apply the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to evaluate workplace-discrimination claims.  *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination, then "the defendant must articulate some legitimate, nondiscriminatory reason for the termination.  If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext."  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (internal citation and quotation marks omitted).

**A**

To establish a prima facie case of age discrimination, a plaintiff must show: "(1) [he] is a member of a protected group, (2) [he] was subject to an adverse employment decision, (3) [he] was qualified for the position, and (4) [he] was replaced by a person outside of the protected class."  *Thompson*, 985 F.3d at 522 (citation omitted).  When an employee is terminated as part of a RIF, the Sixth Circuit "has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'"  *Geiger*, 579 F.3d at 623 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)).  A RIF happens "when an employer eliminates

an employee's position because of business considerations and does not replace that employee after [his] discharge." *Thompson*, 985 F.3d at 522 n.6. Here, it is undisputed that Benteler terminated Pio as part of a workplace RIF, so the modified fourth prong applies.

The first three elements of the *McDonnell Douglas* test are not disputed. First, Pio was fifty-eight years old when he was terminated and is therefore a member of a protected class under the ADEA. *See, e.g., Barnes*, 896 F.2d at 1465 (the first element only requires showing plaintiff is age forty or over). Second, Pio was subject to an adverse employment decision when Benteler terminated him. Third, Pio was qualified for the position because "[i]n a work force reduction case, unlike a hiring case, we can assume that all of the employees are qualified to perform their job since they were actually performing it at the time of their discharge." *Id.* at 1469 n.18. At issue is whether Pio has provided circumstantial or statistical evidence showing Benteler singled him out for termination because of his age. *Geiger*, 579 F.3d at 624 ("The guiding principle [in a work force reduction case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." (alteration in original) (internal quotation marks and citation omitted)).

Pio argues he has presented sufficient circumstantial evidence to establish a prima facie case of age discrimination through comparator evidence and statistical evidence. First, Pio asserts Benteler originally was set to retain him, but then terminated him and substituted Jamie Yax, age thirty-eight. He argues he "possessed substantially better, and certainly superior, objective qualifications than Ms. Yax," and has therefore established a prima facie case of discrimination. CA6 R. 22, Appellant Br., at 26. But comparator evidence in the form of a replacement theory argument is inapposite to the fourth prong of the *McDonnell Douglas* test in the context of a RIF. Pio's replacement theory lacks merit because in a RIF case, an employee is not eliminated and

then replaced after his or her discharge.  *See Geiger*, 579 F.3d at 623 ("A person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" (quoting *Barnes*, 896 F.2d at 1465)). Pio claims Yax "replaced" him because initially he was on a list to be retained and Yax was not, but ultimately, he was terminated and Yax was retained.

In the RIF context, however, "the retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case of age discrimination . . . ." *Thompson*, 985 F.3d at 527.  Furthermore, Pio has not pointed to any evidence establishing that Benteler *actually* substituted Yax for him: Benteler's ratings spreadsheet does not indicate such a substitution, and neither HR Manager Piotrowicz nor Production Unit Leaders Talbot and Jackson indicated any comparison between Yax and Pio.  The fact that Yax was retained does not establish an inference Pio was singled out because of his age.

Next, Pio argues the district court erred by rejecting his "statistical" evidence, which he claims establishes a prima facie case of discrimination.  Pio's statistical evidence consists of a thirteen-page affidavit submitted by his counsel in which the attorney compiled lists of employees by race and national origin, calculated the average age of the employees terminated on May 4, 2018, and calculated the average age of those considered for termination but ultimately retained. Pio asserts this statistical evidence proves the average age of the thirty-six individuals terminated was 50.36 years old, but the average age of the persons retained but considered for termination was 43.27 years old.  Pio argues the district court erred in rejecting these statistics because he established the average age of the terminated employees was "over 7 years older than those considered for termination and not terminated."  CA6 R. 22, Appellant Br., at 17.  He notes that in

making these calculations, his attorney did "4th grade math" that could also be done by defense counsel, the court, and the jury. *Id.* at 29.

The district court found Pio's attorney's revised affidavit "[fell] far short of the type of statistical reports" our circuit has found to support an inference of age discrimination. DE 69, Op. and Order, Page ID 1633. The court considered whether the affidavit, "even if a reliable and properly admitted" form of statistical evidence, could support an inference of discrimination. *Id.* at 1634. It determined the affidavit's 7.09-year gap between the average age of the terminated employees and the average age of those considered for termination but retained "is insufficient 'additional evidence' that [Pio] was singled out for termination during the RIF because of his age." *Id.* The court noted Pio's statistics were not sufficient to "eliminate the most common nondiscriminatory explanations for the disparity" in the RIF context. *Id.* (citation omitted).

Pio did not establish a prima facie case of age discrimination because he has not presented circumstantial or statistical evidence tending to indicate Benteler singled him out for discharge based on his age. To create an inference of age discrimination, "statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Thompson*, 985 F.3d at 526 (quoting *Peeples v. City of Detroit*, 891 F.3d 622, 635 (6th Cir. 2018)). As noted in *Thompson*, we have upheld inferences of age discrimination in cases where statistical data is "offered alongside analyses describing their statistical significance." *Id.*

In *Barnes v. GenCorp, Inc.*, we accepted statistical evidence in the form of two reports prepared by expert statisticians analyzing the termination patterns of the employees discharged during a RIF. 896 F.2d at 1462. The statisticians calculated termination rates for employees in four different age ranges and compared the rates to expected termination rates had employees been terminated by random selection. *Id.* The experts' accompanying reports indicated that, in each of

the age groups, "the actual number of terminations in the stated categories deviated by more than four standard deviations from the expected terminations." *Id.* at 1463. The court held the statistics were sufficient to establish a prima facie case of discrimination, noting "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Id.* at 1466 (quoting *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987)).

By contrast, in *Thompson* we held the plaintiff's statistical evidence—which consisted solely of a compilation of the average age of employees laid off during a RIF, the average age of all those considered for termination, and the average age of those remaining after the RIF—was insufficient because the plaintiff did not provide any analysis explaining the statistical significance of the data and the sample size was too small to provide reliable data. 985 F.3d at 527. Unlike the plaintiff in *Barnes* who presented two statistical reports and an accompanying analysis claiming "to a virtual statistical certainty, age was a determining factor in the termination of the employees," Pio offers no analysis of the significance of his offered statistics. 896 F.2d at 1463. Pio's evidence of average ages is comparable to the statistics rejected by the *Thompson* court: it is not presented by an expert and is not accompanied by a statistical analysis. *See* 985 F.3d at 526.

Pio argues these calculations prove a prima facie case of age discrimination because in *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003), we held an age difference of six years or less between an employee and a replacement is not significant. But this reliance is misplaced, as the *Grosjean* court was analyzing the unmodified fourth prong in the *McDonnell Douglas* test—that the employee was replaced with a person outside of the protected class—in a situation where the termination did not occur during a RIF. *See Grosjean*, 349 F.3d at 336. Because Pio has not provided direct, circumstantial, or statistical evidence showing Benteler

targeted him for discharge due to his age, he has not established a prima facie case of age discrimination.

**B**

Race discrimination, like age discrimination, may be established through direct evidence or by introducing circumstantial evidence using the same *McDonnell Douglas* burden-shifting approach. *Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 835 (6th Cir. 2012). When a plaintiff is alleging "reverse race discrimination"—that a member of the majority race has been discriminated against in favor of a minority race—the *McDonnell Douglas* framework is modified. *Id.* at 837. To establish a prima facie case of reverse discrimination, a plaintiff must establish "(1) background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority, . . . and (2) that the employer treated differently employees who were similarly situated but not members of the protected class." *Hardman v. Univ. of Akron*, 40 F. App'x 116, 119 (6th Cir. 2002) (internal quotation marks and citation omitted).

Pio argues he has established background circumstances indicating his employer discriminated against white employees because Benteler "had a clear preference for Burmese employees, and, therefore, a lack of preference for non Burmese employees." CA6 R. 22, Appellant Br., at 53. Pio asserts Benteler terminated only one of the twenty-seven Burmese employees it considered for termination, but it terminated thirty-eight of the 170 non-Burmese employees it considered for termination. He argues the district court incorrectly stated it would be difficult to identify how many employees were Burmese because Joint Exhibit 60 contains documents proving certain employees were born in Myanmar. Pio asserts Benteler treated two Burmese employees more favorably than he was treated, even though he was "substantially better and plainly superior." *Id.* at 55.

The district court stated Pio's "reverse race discrimination prima facie case is even thinner than his age discrimination prima facie case." DE 69, Op. and Order, Page ID 1636. The court noted Pio had not identified or established any background circumstances that Benteler discriminated against its white employees and had merely asserted a theory that Benteler "had a pipeline for hiring Burmese people." *Id.* Regarding the allegation Benteler had fired only one of its twenty-seven Burmese employees and a greater percentage of its white employees, the district court noted Benteler's demographic data did not include "Burmese" as an identifier and it would therefore be difficult for the employer to systemically favor Burmese or self-identified Burmese employees. *Id.*

Pio did not establish a prima facie case of race discrimination because Pio did not present circumstantial or statistical evidence indicating that Benteler singled him out for discharge based on his race. Pio has not established any background circumstances to support his assertion that Benteler discriminated against its white employees or treated similarly situated Burmese employees differently. His statistics (the percentage of Burmese employees terminated and the percentage of white employees terminated out of those considered for termination) suffer from the same shortcomings as those provided in support of his age discrimination claim, as he has failed to provide any actual analysis of the statistics' significance. *See Thompson*, 985 F.3d at 527. It is also difficult to determine the accuracy of the statistics Pio presented regarding how many Burmese individuals worked at Benteler from the record. Pio asserts Joint Exhibit 60 "contains documents proving beyond any reasonable doubt that the employees in question were born in Myanmar." CA6 R. 22, Appellant Br., at 54. But that exhibit merely contains excerpts from certain employees' personnel files. Such excerpts do not paint a full picture of the total number of employees from Myanmar or identifying as Burmese, and it is not apparent from Benteler's

databases whether an employee is Burmese.   DE 50-61, Joint Exhibit List, Page ID 1368.

Furthermore, Benteler's HR team did not undertake review of all historical data or files of

employees considered for termination.  For these reasons, the district court correctly held Pio failed

to establish a prima facie case of race discrimination.

## C

When a plaintiff establishes a prima facie case of discrimination, the burden shifts to the

employer to provide a legitimate, nondiscriminatory reason for the adverse action.  *Thompson*, 985

F.3d at 522 (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994)).  If the

employer can do so, the burden shifts back to the employee to make a showing that the stated

reason is merely pretext for unlawful discrimination.  *Romans*, 668 F.3d at 838.  To establish

pretext, a plaintiff may show the defendant's reason "(1) has no basis in fact, (2) did not actually

motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged

conduct." *Thompson*, 985 F.3d at 522 (citations omitted).

Even if Pio had established a prima facie case of age or race discrimination, Benteler has

asserted legitimate, nondiscriminatory reasons for his termination that Pio has not shown to be

pretextual.   Benteler articulated legitimate, nondiscriminatory reasons for terminating Pio,

including "inconsistent attendance, poor performance, and negative attitude." DE 48, Def.'s Mot.

Summ. J., Page ID 183.  This meets Benteler's burden of production, as "the employer's burden

is satisfied if he simply explains what he has done or produc[es] evidence of legitimate

nondiscriminatory reasons." *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2

(1978) (alteration in original) (internal quotation marks and citation omitted).   The burden

therefore shifts back to Pio to make a showing that Benteler's stated reasons of attendance,

performance, and attitude issues are merely pretext for age, race, or national origin discrimination.

Pio argues that "there was [sic] plenty of specific, articulable and objective facts, not just subjective opinions, from which a jury could conclude that the defendant's asserted, subjective reasons were false and a pretext."  CA6 R. 22, Appellant Br., at 31.  Pio asserts Benteler retained employees whose performance and attendance was worse than his own, pointing to sixteen other employees and asserting a comparison between them and himself "reveals that he is 'significantly better' and 'plainly superior.'"  *Id.* at 35–47.  But even if other employees also had attendance or performance issues, this does not mean Benteler's stated reasons for terminating Pio had no basis in fact.  The record reflects problems with Pio's attendance, performance, and attitude.

As our circuit has previously noted, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual."  *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).  "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's."  *Id*. at 628.  Comparing Pio's performance and attendance records of with those of the retained employees, a reasonable decisionmaker could make a plausible argument for selecting a different employee over Pio based on their respective qualifications.  Nor do Pio's arguments prove that Benteler's legitimate, nondiscriminatory reasons for his termination did not *actually* motivate the adverse employment action.  Finally, he has not shown that Benteler's proffered reasons were insufficient to warrant his termination.

Pio further argues he has established pretext pursuant to *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011).  In *Provenzano*, a failure to promote case, our circuit held

> [r]elative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such

that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination.

*Provenzano*, 663 F.3d at 815 (internal quotation marks and citations omitted). Here, Pio has not proven that no reasonable employer would have chosen the retained employees over himself. And although Pio may have been as qualified as some of the retained employees, as explained above he has not shown any other probative evidence of age or race discrimination. Pio's disagreement with Benteler's "honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001).

"[T]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) (quoting *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)). Viewing the record in a light most favorable to Pio, he has not identified evidence to allow a reasonable jury to infer that Benteler's proffered reasons for selecting him for termination during its workforce reduction was pretextual and that his employment was instead terminated because of his age or race.

## IV

The district court correctly held Pio did not establish a prima facie case of age, race, or national origin discrimination. Moreover, Benteler articulated legitimate, nondiscriminatory reasons for his termination that Pio did not show to be pretext for unlawful discrimination. Pio's claims fail and Benteler is entitled to summary judgment. We affirm.